Rob Bonta
Attorney General of California
Mark R. Beckington
Supervising Deputy Attorney General
Robert L. Meyerhoff, SBN 298196
Gabrielle D. Boutin, SBN 267308
S. Clinton Woods, SBN 246054
Charles J. Sarosy, SBN 302439
Deputy Attorneys General
  300 South Spring Street, Suite 1702
  Los Angeles, CA  90013-1230
  Telephone:  (213) 269-6356
  Fax:  (916) 731-2119
  E-mail:  Charles.Sarosy@doj.ca.gov
*Attorneys for Rob Bonta, in his official capacity as*
*Attorney General of the State of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **LANCE BOLAND, ET AL.,**<br><br>Plaintiffs,<br><br>v.<br><br>**ROB BONTA, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE STATE OF CALIFORNIA, ET AL.,**<br><br>Defendants. | Case No. 8:22-cv-01421-CJC-ADS<br><br>**DEFENDANT'S SECOND CLOSING BRIEF FOLLOWING EVIDENTIARY HEARING ON PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**<br><br>Courtroom:  9B<br>Judge:       Hon. Cormac J. Carney<br>Trial Date:  None set<br>Action Filed: August 1, 2022 |

# TABLE OF CONTENTS

**Page**

Introduction ....................................................................................1

Argument.........................................................................................1

I.      Plaintiffs Fail to Show They Are Likely to Succeed on the Merits Because They Misconstrue and Misapply *Bruen*.....................1

      A.    Plaintiffs Argue the Plain Text Inquiry Is Nonexistent or Should Be Applied Broadly, Ignoring *Bruen* and Cases Applying the Inquiry...................................................................1

      B.    The Historical Inquiry Requires Analogical Reasoning, Not a "Historical Twin" ...............................................................4

II.     Plaintiffs Fail to Establish the Remaining *Winter* Factors, Which They Try to Shift the Burden of Showing to Defendant ....................7

      A.    There Is No Evidence of Irreparable Harm ...............................8

      B.    Plaintiffs Incorrectly Seek To Shift the Equitable Factors Burden onto Defendant and, in Any Event, Cannot Meet It ...............................................................................................9

Conclusion.....................................................................................10

1

**TABLE OF AUTHORITIES**

2

3

**Page**

4

**CASES**

5

*Baird v. Bonta*

6

2022 WL 17542432 (E.D. Cal. Dec. 8, 2022) ................................................8, 9

7

*Benisek v. Lamone*

138 S. Ct. 1942 (2018).......................................................................7

8

*DISH Network Corp. v. F.C.C.*

9

653 F.3d 771 (9th Cir. 2011)...............................................................8

10

*District of Columbia v. Heller*

11

554 U.S. 570 (2008)...................................................................3, 4, 5

12

*Doe v. Harris*

13

772 F.3d 563 (9th Cir. 2014)............................................................7, 8

14

*Duncan v. Bonta*

15

No. 3:17-cv-01017-BEN-JLB (S.D. Cal. Nov. 10, 2022) ................................5

16

*Gitlow v. New York*

268 U.S. 652 (1925)...........................................................................7

17

18

*Junior Sports Mag. Inc. v. Bonta*

2022 WL 14365026 (C.D. Cal. Oct. 24, 2022)...................................8

19

*Klein v. City of San Clemente*

20

584 F.3d 1196 (9th Cir. 2009)..............................................................8

21

*Miller v. Smith*

22

2023 WL 334788 (7th Cir. Jan. 20, 2023).........................................2

23

*New York State Rifle & Pistol Association, Inc., v. Bruen*

24

__ U.S. __, 142 S. Ct. 2111 (2022) ..........................................*passim*

25

*Oakland Tactical Supply, LLC v. Howell Twp.*

26

2023 WL 2074298 (E.D. Mich. Feb. 17, 2023).................................3

27

*Or. Firearms Fed'n, Inc. v. Brown*

28

2022 WL 17454829 (D. Or. Dec. 6, 2022)......................................8, 9

1
2

# TABLE OF AUTHORITIES
### (continued)

Page

3
4
*Pena v. Lindley*
    898 F.3d 969 (9th Cir. 2018)................................................................10

5
6
*Range v. Att'y Gen. United States*
    53 F.4th 262 (3rd Cir. 2022) ................................................................2

7
8
*Safari Club Int'l v. Bonta*
    2023 WL 184942 (E.D. Cal. Jan. 12, 2023) ........................................8

9
10
*Tracy Rifle & Pistol LLC v. Harris*
    637 Fed.App'x 401 (9th Cir. 2016) ......................................................8

11
*United States v. Coombes*
    2022 WL 4367056 (N.D. Okla. Sept. 21, 2022) ..................................2

12
13
*United States v. Gonzalez*
    2022 WL 4376074 (7th Cir. Sept. 22, 2022) .......................................2

14
15
*United States v. Holton*
    2022 WL 16701935 (N.D. Tex. Nov. 3, 2022)....................................7

16
17
*United States v. Reyna*
    2022 WL 17714376 (N.D. Ind. Dec. 15, 2022) ..................................3

18
19
*Winter v. Natural Res. Def. Council, Inc.*
    555 U.S. 7 (2008)..........................................................................*passim*

20
**STATUTES**

21
22
California Penal Code
    § 31910(b)(7)...................................................................................10

23
**CONSTITUTIONAL PROVISIONS**

24
25
United States Constitution
    First Amendment ..................................................................7, 8, 9
    Second Amendment...........................................................*passim*

26
    Fourteenth Amendment .............................................................5

27
28

iii

**INTRODUCTION**

Plaintiffs' first closing brief is simply another effort to evade their burden to show they are entitled to the extraordinary remedy of a preliminary injunction. First, they argue that the threshold plain text inquiry, which is their burden to meet, is not required under *New York State Rifle & Pistol Association, Inc., v. Bruen*, __ U.S. __, 142 S. Ct. 2111 (2022). Pls.' First Closing Br. ("Pls.' Br."), ECF No. 57, at 1-3. This is a misreading of *Bruen* and cases that have since applied *Bruen*. Plaintiffs also demand a historical twin for the challenged requirements, a demand that *Bruen* explicitly rejects. Further, Plaintiffs assert, contrary to Supreme Court precedent, that they need only show a likelihood of success on the merits under *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Pls.' Br. 18-19. They try to shift the burden of showing the other factors, arguing the Defendant should provide evidence that the balance of equities and public interest weigh against a preliminary injunction. *Id.* at 20. This turns *Winter* on its head. Under a proper application of *Winter*, Plaintiffs have failed to meet their burden to establish that equitable considerations weigh in favor of an injunction and upending the status quo.

**ARGUMENT**

**I.    PLAINTIFFS FAIL TO SHOW THEY ARE LIKELY TO SUCCEED ON THE MERITS BECAUSE THEY MISCONSTRUE AND MISAPPLY *BRUEN***

**A.    Plaintiffs argue the plain text inquiry is nonexistent or should be applied broadly, ignoring *Bruen* and cases applying the inquiry**

Plaintiffs endorse an approach that skips the plain text analysis, claiming that some post-*Bruen* courts "subject all laws directly involving firearms to the historical inquiry test." Pls.' Br. 2. This contradicts Plaintiffs' argument at the hearing, PI Day2 Tr. 62, and more importantly, *Bruen*. Before conducting the historical analysis in *Bruen*, the Supreme Court first "turn[ed] to whether the plain text of the Second Amendment protect[ed]" the proposed course of conduct. 142 S. Ct. at 2134. Only after concluding that it did so did the Supreme Court move to the

1  historical inquiry.  *Id.* at 2134-35.  This is how numerous district courts have since
2  applied the framework.  Def.'s First Closing Br. ("Def.'s Br."), ECF No. 56, at 3-4.
3      Plaintiffs ask this Court to ignore the Supreme Court's application of its own
4  framework and instead offer inapposite language from vacated and unpublished
5  opinions.  Pls.' Br. 2-3 (citing *Range v. Att'y Gen. United States*, 53 F.4th 262 (3rd
6  Cir. 2022), *vacated and reh'g granted*, 56 F.4th 992 (3rd Cir. 2023); *Miller v.*
7  *Smith*, 2023 WL 334788, at *1 (7th Cir. Jan. 20, 2023); *United States v. Gonzalez*,
8  2022 WL 4376074, at *2 (7th Cir. Sept. 22, 2022)).  None of these cases support
9  Plaintiffs' view and, even if they did, *Bruen* overrides them.  Putting aside that
10  *Range* is a vacated opinion, the court there actually "beg[a]n [the] analysis with the
11  text of the Second Amendment" to evaluate whether a felon was protected by the
12  Amendment.  53 F.4th at 271.  *Miller* did not even apply *Bruen*'s methodology, but
13  merely remanded so the district court could "evaluate any subsequent motions
14  under *Bruen*'s text, history, and tradition framework."  2023 WL 334788, at *1.
15  *Gonzalez*'s discussion of the Second Amendment claim is cursory because
16  appellant's own counsel believed the claim to be "frivolous," and the *Bruen* citation
17  within refers only to the disapproval of means-end scrutiny.  2022 WL 4376074, at
18  *2.  These three cases thus carry no persuasive value here.
19      Alternatively, Plaintiffs seek to skip the plain text inquiry by rendering it
20  meaningless through an overly broad definition of the proposed course of conduct.
21  Pls.' Br. 4-6.  Plaintiffs rely on four district court decisions finding that the Second
22  Amendment's plain text covered the same proposed course of conduct—a
23  prohibited person's possession of a firearm.  Pls.' Br. 3-6.  In all four cases, the
24  courts concluded that a prohibited person, whether as a felon or a restrained person,
25  fell within the plain meaning of "the people" in the Second Amendment.  *See, e.g.*,
26  *United States v. Coombes*, 2022 WL 4367056, at *3-4 (N.D. Okla. Sept. 21, 2022).
27      These cases actually support Defendant's position that the conduct must be
28  specifically delineated.  Def.'s Br. 4, 7.  If these cases supported a "broad"

1   approach, then they would have defined the conduct as simply "possession of a

2   firearm" and not analyzed the meaning of "the people."  But they did not do so.

3   Instead, they each essentially defined the proposed conduct as "possession of a

4   firearm *by a prohibited person*" and conducted the plain text analysis accordingly.

5   This is akin to the approach taken in *United States v. Reyna*, 2022 WL 17714376, at

6   *4 (N.D. Ind. Dec. 15, 2022), which characterized the proposed course of conduct

7   as "possession of a firearm *with an obliterated serial number*," and not more

8   generally as "mere possession [of a firearm]."

9         The proposed conduct must be conduct the challenged regulation actually

10   prohibits.  *Oakland Tactical Supply, LLC v. Howell Twp.*, 2023 WL 2074298, at *3

11   (E.D. Mich. Feb. 17, 2023), *notice of appeal filed*, No. 23-1179 (6th Cir. Mar. 1,

12   2023) ("The proposed conduct could not be simply 'training with firearms' because

13   the zoning ordinance does not prohibit 'training with firearms.'").  The proposed

14   conduct thus cannot simply be "acquiring a handgun" because the UHA does not

15   prohibit such conduct.  Rather, the proposed conduct is to purchase off-Roster

16   semiautomatic pistols without a CLI, MDM, or microstamping that are available for

17   purchase in other states.  Def.'s Br. 7.  Defining the proposed conduct as such is not

18   a backdoor revival of means-end scrutiny, as Plaintiffs suggest.  Pls.' Br. 7-9.

19   Specifically defining the conduct is instead the approach most consistent with

20   *Bruen* and *District of Columbia v. Heller*, 554 U.S. 570 (2008).  *Reyna*, 2022 WL

21   17714376, at *4 (explaining that *Bruen* "defined the regulated conduct as publicly

22   carrying a handgun" and *Heller* "defined the regulated conduct as handgun

23   possession in the home").  It is also the only approach that would ensure the plain

24   text inquiry has any meaning.  *Id.* (broadly defining the proposed conduct would

25   cause any regulation concerning the same topic to automatically advance to the

26   historical inquiry); *Oakland Tactical Supply*, 2023 WL 2074298, at *3, n.4 (same,

27   calling this an "absurd result").

28

Plaintiffs also argue that the plain text inquiry should not consider whether the challenged law regulates a person's ability to defend themselves.  Pls.' Br. 9.  But that squarely contradicts *Bruen*, which evaluated whether the conduct fell within the Second Amendment's operative clause that "'guarantee[s] the individual right to possess and carry weapons in case of confrontation.'"  *Bruen*, 142 S. Ct. at 2134 (quoting *Heller*, 554 U.S. at 592).  Here, the plain text does not cover the proposed conduct because the right to "keep . . . Arms" (to have or possess weapons) or to "bear Arms" (to carry weapons for the purpose of confrontation) does not encompass a right to avoid public-safety requirements for commercial purchase transactions.  *Id.* at 2134; *Heller*, 554 U.S. at 582-84.  It is not a plain text analysis to say the proposed conduct "implicates the Second Amendment" or is impliedly protected by the Second Amendment, as Plaintiffs assert.  Def.'s Br. 7-8.

Plaintiffs therefore cannot avoid (and fail to meet) their burden to establish the Second Amendment's plain text covers the proposed conduct.  Def.'s Br. 7-11.

## B.   The historical inquiry requires analogical reasoning, not a "historical twin"

Plaintiffs' approach to the historical inquiry would effectively require a "historical twin" or "dead ringer" as an analogous restriction—an approach that *Bruen* explicitly rejected.  *See* 142 S. Ct. at 2133; Pls.' Br. 16-18.[1]  First, Plaintiffs argue that analogical reasoning can be used only when the historical inquiry requires a "more nuanced approach," but not when the analysis is "fairly straightforward."  Pls.' Br. 14-15.  In the latter analysis, Plaintiffs assert "the historical laws need to practically mirror the modern law."  *Id.* 15.  This position belies *Bruen*, which made clear that analogical reasoning is to be used in both types

---

[1] Plaintiffs refer to a Prof. Cornell declaration in another lawsuit challenging the UHA, claiming it contradicts his testimony that more time is needed to conduct a complete historical review.  Pls.' Br. 16, n.6.  Defendant did not represent there, nor does it represent here, that a declaration constitutes the full historical analysis contemplated by Prof. Cornell in his testimony.  Plaintiffs' expert agreed that a full historical analysis "does take a very long time" and is a "slow and laborious process."  PI Day2 Tr. 49.

of historical inquiries.  142 S. Ct. at 2131.  *Heller* and *Bruen* "exemplifie[d]" the straightforward inquiry and still relied on "historical analogies," which were "relatively simple to draw."  *Bruen*, 142 S. Ct. at 2131-32.  But drawing simple analogies is not equivalent to no analogical reasoning at all, as Plaintiffs contend.

Moreover, Plaintiffs assert that the historical analogues must be "widespread" and "common," but this is contrary to *Bruen*.  Pls.' Br. 14.  Rather, *Bruen* explained that "analogical reasoning requires only that the government identify a *well-established and representative* historical analogue."  *Id.* at 2133.  *Bruen* did not impose a numeric threshold for how many states must have adopted the relevant historical analogues.  In the context of a "fairly straightforward" historical analysis for public carry laws, *Bruen* indicated that one law from Texas was insufficient, as were laws from the Western Territories when they conflicted with earlier evidence, but *Bruen* in no way imposed a requirement that the historical analogues had to exist in a majority of jurisdictions to be relevant.[2]  *Id.* at 2153-54.

Notwithstanding Plaintiffs' inaccurate account of the "fairly straightforward" version of the historical analysis, it is the "more nuanced" historical analysis that applies here.  The challenged requirements address "unprecedented societal concerns" and "dramatic technological changes" relating to the spread of semiautomatic pistols in the 20th century.  Def.'s Br. 12.  Single shot, muzzle-loaded weapons were the ubiquitous firearm until after the Civil War, and semiautomatic firearms, which reflect dramatically different firearm technologies than those that were widely available in 1791 or 1868, did not circulate appreciably until after World War I.  Decl. of Robert Spitzer at ¶¶ 26-31, *Duncan v. Bonta*, No. 3:17-cv-01017-BEN-JLB (S.D. Cal. Nov. 10, 2022) (ECF No. 137-8).  Further, the high rate of gun violence and homicides is a more recent phenomenon due in part to technological advances that have increased the lethality of firearms.  Def.'s Br. 12.

---

[2] Contrary to Plaintiffs' claim, Pls.' Br. 15, there can be no debate here that the period around the adoption of the Fourteenth Amendment is relevant to the historical analysis because their expert admitted as much.  PI Day2 Tr. 49-50.

1  The challenged requirements thus address "regulatory challenges posed by firearms

2  today," which "are not always the same as those that preoccupied the Founders in

3  1791 or the Reconstruction generation in 1868." *Bruen*, 142 S. Ct. at 2132.

4      Even if the historical analysis were a "fairly straightforward" one, the firearm

5  and ammunition inspection laws as well as the firearm and gunpowder storage laws

6  previously highlighted by Defendant are relevantly similar to the CLI and MDM

7  requirements.  Def.'s Br. 12-16.[3]  And, the historical analogues supporting federal

8  serial number laws are relevantly similar to the microstamping requirement.  Def.'s

9  Br. 15-16.  Plaintiffs take issue with many of these historical analogues because

10 how those laws regulated the conduct is different from the means used by the

11 challenged requirements.  Pls.' Br. 17-18.  But the *means* by which a restriction

12 burdens a Second Amendment right is not determinative; rather, what is

13 determinative is the *degree* to which the restriction does so (and why).  *See, e.g.*,

14 *Bruen*, 142 S. Ct. at 2145 (distinguishing historical restrictions from challenged

15 statute where "[n]one of these [historical] restrictions imposed a *substantial burden*

16 on public carry *analogous to the burden* created by New York's restrictive

17 licensing regime") (emphases added).

18     As Defendant previously explained, the burdens from the inspection and

19 storage laws were greater than those imposed by the CLI and MDM requirements.

20 Def.'s Br. 14-16.[4]  And, the justifications behind the historical analogues and CLI

21 and MDM requirements are similar: to help protect gun owners and those around

22 them from unintended injuries resulting from the inherent dangers of firearms and

23 ammunition.  *Id.*  As to microstamping, the burden is as "negligible" as that of a

24 serial number, whereas the historical analogues for serial numbers ("sale

25 ─────────────

26 [3] Plaintiffs' suggestion that Defendant admitted otherwise misreads the hearing transcript. Pls.' Br. 18.

27 [4] Plaintiffs agree that the lack of some ergonomically enhanced semiautomatic pistols on the Roster imposes no burden because "the size and functionality of the different generation models is essentially the same" as those on

28 the Roster.  Decl. of Brian Marvel ("Marvel Decl."), ECF No. 57-2, ¶ 7.

1   restrictions, mandatory firearm registration, and taxes on personally held

2   firearms"), and by extension microstamping, "imposed greater burdens on firearm

3   owners and sellers."  *United States v. Holton*, 2022 WL 16701935, at *5 (N.D. Tex.

4   Nov. 3, 2022).  And, "while effected by different means," these analogues address

5   similar goals as those addressed by serial numbers and microstamping: tracing

6   firearms to track how dangerous individuals use them.  *Id.*

7       Plaintiffs demand a near perfect match, but that is unnecessary under *Bruen*

8   because what matters is whether the historical law is "analogous enough" by

9   "impos[ing] a comparable burden on the right of armed self-defense" that is

10  "comparably justified."  142 S. Ct. at 2133.  The currently identified historical

11  analogues for the challenged requirements meet this standard.

12  **II.  PLAINTIFFS FAIL TO ESTABLISH THE REMAINING *WINTER* FACTORS,
13  WHICH THEY TRY TO SHIFT THE BURDEN OF SHOWING TO DEFENDANT**

14      Plaintiffs contend that they need only establish a likelihood of success on the

15  merits to obtain a preliminary injunction, asserting that "in a fundamental rights

16  context," the remaining *Winter* factors are meaningless if there is a likelihood of

17  success on the merits.  Pls.' Br. 19.  But Plaintiffs cite nothing establishing that they

18  are immune from *Winter*'s requirements simply because they seek an injunction

19  based on a constitutional right.  Nor could they, because pre- and post-*Bruen*

20  precedent demonstrates that *Winter* applies here.

21      The Supreme Court has made clear that "a preliminary injunction does not

22  follow as a matter of course from a plaintiff's showing of a likelihood of success on

23  the merits."  *Benisek v. Lamone*, 138 S. Ct. 1942, 1943-44 (2018) (affirming denial

24  of a preliminary injunction for a First Amendment political gerrymandering claim).

25  In the context of another constitutional right, the First Amendment's right to free

26  speech, the Ninth Circuit has also made clear that a plaintiff must demonstrate the

27  remaining *Winter* factors even after showing a likelihood of success on the merits.

28  *Doe v. Harris*, 772 F.3d 563, 582 (9th Cir. 2014); *see also Gitlow v. New York*, 268

1    U.S. 652, 666 (1925) (freedom of speech is a fundamental right).  The Ninth Circuit

2    warned that courts cannot "simply assume" the remaining factors collapse into the

3    likelihood of success factor, which is exactly what Plaintiffs urge for here.  *Doe*,

4    772 F.3d at 582-83; *see also DISH Network Corp. v. F.C.C.*, 653 F.3d 771, 776 (9th

5    Cir. 2011) (rejecting the argument that showing a likelihood of success on a First

6    Amendment claim relieves the need to satisfy the other *Winter* factors); *Klein v.*

7    *City of San Clemente*, 584 F.3d 1196, 1207 (9th Cir. 2009) (requiring a showing of

8    the remaining *Winter* factors even when the plaintiff was likely to succeed on the

9    merits of his First Amendment claim); *Tracy Rifle & Pistol LLC v. Harris*, 637

10   Fed.App'x 401, 402 (9th Cir. 2016) (affirming denial of preliminary injunction for

11   a First Amendment claim even though likelihood of success was established).

12       *Bruen* did not upend these well-settled standards governing interim injunctive

13   relief and, since *Bruen*, district courts have denied such relief for First and Second

14   Amendment claims when the plaintiffs failed to establish *all* four *Winter* factors.

15   *See, e.g.*, *Baird v. Bonta*, 2022 WL 17542432, at *8 (E.D. Cal. Dec. 8, 2022); *Or.*

16   *Firearms Fed'n, Inc. v. Brown*, 2022 WL 17454829, at *9 (D. Or. Dec. 6, 2022);

17   *Safari Club Int'l v. Bonta*, 2023 WL 184942, at *5-6, *21 (E.D. Cal. Jan. 12, 2023);

18   *Junior Sports Mag. Inc. v. Bonta*, 2022 WL 14365026, at *5-6, *30-31 (C.D. Cal.

19   Oct. 24, 2022).  Plaintiffs thus cannot avoid showing the remaining *Winter* factors.

20       **A.    There is no evidence of irreparable harm**

21       The only irreparable harm identified by Plaintiffs continues to be an alleged

22   Second Amendment violation.  Pls.' Br. 20-21.  Arguing that "an intrusion into a

23   Constitutional right" is sufficient, they also discount the fact that Mr. Boland and

24   Mr. May can each defend themselves with the handguns they currently own and can

25   purchase prior to judgment.  Pls.' Br. 20-21; Def.'s Br. 17-18.  But "[i]rreparable

26   harm is harm that is immediate, rather than remote or speculative."  *Or. Firearms*

27   *Fed'n*, 2022 WL 17454829, at *18 (citing *City of Los Angeles v. Lyons*, 461 U.S.

28   95, 111 (1983) and *Caribbean Marine Services Co., Inc. v. Baldrige*, 844 F.2d 668,

674 (9th Cir. 1988)).  Moreover, unlike First Amendment violations, neither the Supreme Court nor Ninth Circuit has held that "deprivation of Second Amendment rights alone, even for an instant, constitutes irreparable harm," which is what Plaintiffs assert here.  *Or. Firearms Fed'n*, 2022 WL 17454829, at *18.  The UHA does not deprive Plaintiffs of the semiautomatic handguns, including the off-Roster ones, that they already possess.  And, Plaintiffs provide no evidence that the semiautomatic pistols they already own "would be so ineffective for use in self-defense as to constitute immediate and irreparable harm." *Id.* at *19.  The State, however, would be harmed by an injunction.  Def.'s Br. 18.

### B. Plaintiffs incorrectly seek to shift the equitable factors burden onto Defendant and, in any event, cannot meet it

Perhaps recognizing their failure to present evidence showing the balance of equities and public interest weigh in their favor, Plaintiffs now mistakenly argue this burden falls to Defendant.  Pls.' Br. 20.  But caselaw makes clear that it is the *moving party* that bears the burden of demonstrating the equitable factors weigh toward an injunction.  *Baird*, 2022 WL 17542432, at *8 ("[P]reliminary assessments of the merits can turn out to be incorrect [citations]. . . . The moving plaintiff must persuade the court that the benefits of a potential mistake outweigh the costs."); *see also Winter*, 555 U.S. at 32 ("[T]he balance of equities and consideration of the public interest—are pertinent in assessing the propriety of any injunctive relief, preliminary or permanent.").  Plaintiffs bear the burden and, because they seek an injunction that would change the status quo, must also show "this is not a 'doubtful' case and that the preliminary injunction they propose is necessary to avoid 'extreme or very serious damage.'" *Baird*, 2022 WL 17542432, at *8 (quoting *Doe v. Snyder*, 28 F.4th 103, 111 (9th Cir. 2022)).

Plaintiffs have not met this burden.  They posit that accidental firearm injuries and deaths in California have not decreased because of the CLI and MDM requirements, citing a 2020 study on nonfatal firearm injuries in California from

2005 to 2015.  Pls.' Br. 20, n.13 (citing Frank Decl., Ex. 1).  But the study actually shows that unintentional firearm injuries decreased by 12.7 percent from 2005 to 2015, and the lethality rate of such injuries decreased "significantly" from 5.3 percent to 1.1. percent.  Frank Decl., Ex. 1 at 1, 5, 9.  The study is thus consistent with Defendant's showing that CLI and MDM requirements reduce accidental firearm injuries and deaths.  Def.'s Br. 18.

Plaintiffs also point to a declaration from the Peace Officers Research Association of California ("PORAC") president, Mr. Marvel.  Pls.' Br. 20.  Putting aside the fact that Plaintiffs failed to make this witness available at the hearing for cross-examination, the declaration adds nothing to the analysis.  Mr. Marvel's personal opinions about the UHA's effectiveness—and other, different pending legislation—merely reflect his policy preferences, which can be communicated to the Legislature via PORAC's "significant" lobbying presence. Marvel Decl. ¶ 2-17.  But it is not the court's role to "re-litigate a policy disagreement that the California legislature already settled."[5]  *Pena v. Lindley*, 898 F.3d 969, 980 (9th Cir. 2018).  Defendant has contemporaneously filed objections to this declaration.

Plaintiffs have thus failed to meet their heightened burden, whereas Defendant—without having the burden to do so—has shown the equitable factors weigh against a preliminary injunction.  Def.'s Br. 18-20.[6]

**CONCLUSION**

The Court should deny Plaintiffs' Motion for a Preliminary Injunction.[7]

---

[5] Mr. Marvel also comments on the UHA's peace officer exemptions, Marvel Decl. ¶ 4, which are irrelevant because Plaintiffs do not bring an equal protection claim and, in any event, was rejected by the Ninth Circuit. *Pena*, 898 F.3d at 987.

[6] As Defendant warned at the hearing, PI Day2 Tr. 127, Plaintiffs continue to change the scope of the injunction they seek. Pls.' Br. 21, n.15. Plaintiffs assert that the three-for-one provision should also be enjoined. *Id.* (citing Cal. Penal Code § 31910(b)(7)). But Plaintiffs failed to present any evidence or argument—at the hearing or otherwise—as to why the *Winter* factors favor enjoining this provision.

[7] If the Court were to grant Plaintiffs' Motion in any form, Defendant again asks the Court to immediately stay the order pending appeal. PI Day2 Tr. 152.

1

2    Dated:  March 10, 2023                          Respectfully submitted,

3                                                    ROB BONTA
                                                     Attorney General of California
4                                                    MARK R. BECKINGTON
                                                     Supervising Deputy Attorney General
5                                                    ROBERT L. MEYERHOFF
                                                     GABRIELLE D. BOUTIN
6                                                    S. CLINTON WOODS
                                                     Deputy Attorneys General

7

8                                                    */s/ Charles J. Sarosy*
                                                     CHARLES J. SAROSY
9                                                    Deputy Attorney General
                                                     *Attorneys for Rob Bonta, in his official*
10                                                   *capacity as Attorney General of the*
                                                     *State of California*
11
     SA2022303421
12   43603984.docx

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**CERTIFICATE OF COMPLIANCE**

2
      The undersigned, counsel of record for Defendant, certifies that this brief

3
contains 3,810 words, which:

4
     <u>X</u> complies with the word limit of L.R. 11-6.1.

5
     __ complies with the word limit set by court order dated .

6
Dated:  March 10, 2023                Respectfully submitted,

7

8
                                       ROB BONTA
                                       Attorney General of California

9

10
                                       */s/ Charles J. Sarosy*
                                        CHARLES J. SAROSY

11
                                        Deputy Attorney General
                                        *Attorney for Rob Bonta, in his official*

12
                                        *capacity as Attorney General of the*
                                        *State of California*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# CERTIFICATE OF SERVICE

Case Name:   **_Boland, Lance, et al. v. Robert_**          Case No.   **8:22-cv-01421-CJC-ADS**
**_Bonta, et al._**

I hereby certify that on <u>March 10, 2023</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

- **DEFENDANT'S SECOND CLOSING BRIEF FOLLOWING EVIDENTIARY HEARING ON PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

- **DEFENDANT'S OBJECTIONS TO DECLARATION OF BRIAN R. MARVEL SUPPORTING PLAINTIFFS' FIRST CLOSING BRIEF FOLLOWING EVIDENTIARY HEARING ON PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>March 10, 2023</u>, at San Francisco, California.

_____                  _____
K. Figueroa-Lee                                                           Signature
Declarant

SA2022303421
43603962.docx